1  CHRISTOPHER LEE COLE
   1025 17th Street, Apt. 2
2  San Francisco, CA 94107
   TEL: (415) 624-7630
3  FAX: (415) 723-7277
   Email: colekey@gmail.com
4
   In Pro Per
5

6              **UNITED STATES DISTRICT COURT**

7          **FOR THE NORTHERN DISTRICT OF CALIFORNIA**

8                    **(San Francisco Division)**

9
   CHRISTOPHER LEE COLE,                    Case No.
10
                Plaintiff,
11                                          **COMPLAINT FOR DAMAGES AND**
        vs.                                 **REQUEST FOR JURY TRIAL**
12
   FIRST REPUBLIC BANK, a Nevada
13 Corporation

14              Defendant.

15

16

17

18

19

20

21

22

23

24

25

26

27

28

E-filing

1  Plaintiff CHRISTOPHER LEE COLE alleges:

2  **I.**

3  **COMMON FACTUAL ALLEGATIONS**

4

5  1.     This is an action to collect unpaid wages and employee benefits owed pursuant to a

6  written and oral employment agreement. It is also an action seeking a declaratory relief to void a

7  purported arbitration agreement, as well as a purported severance agreement on the basis of fraud,

8  duress, mistake, lack of capacity and/or lack of consideration.

9  2.     Jurisdiction. This Court has original jurisdiction over this action under 28 U.S.C.

10  section 1332, in that it is a civil action between citizens of different states and the matter in

11  controversy exceeds the sum of $75,000, exclusive of interest and costs because Plaintiff seeks lost

12  wages and emotional distress damages exceeding $75,000. Plaintiff is a California citizen and at all

13  times relevant hereto was a resident of the City and County of San Francisco. Defendant FIRST

14

15  REPUBLIC BANK ("First Republic" or the "Bank") is incorporated in the State of Nevada and

16  registered with the California Secretary of State under corporate license number C1977326.

17  3.     Venue. Venue is appropriate in this District because all of the actions giving rise to

18  this lawsuit occurred in the City and County of San Francisco. Furthermore, First Republic does

19  business in the City and County of San Francisco.

20

21  4.     Sometime in February 1997, First Republic began its employment relationship with

22  Plaintiff when it hired Mr. Cole as "Savings Officer." First Republic's written, oral and implied

23  employment agreement required Mr. Cole to sign, among other things, an "Arbitration Agreement"

24  drafted by First Republic. A true and correct copy of the "written" portions of First Republic's

25  employment agreement is hereto attached as Exhibit "A". The "Arbitration Agreement" appears on

26  page 3 of Exhibit "A". First Republic's written, implied and oral employment agreement, as

27  modified through his promotions within the Bank, requires First Republic to compensate Mr. Cole's

28

COMPLAINT AND REQUEST FOR JURY TRIAL                                                    1
Case No.

employment for, among other things, referrals to various financial products and services of the Bank through a commission based pay system.

5. Mr. Cole provided over 10 years of dedicated service and strong revenue generation at First Republic. Mr. Cole's performance reviews consistently stated that he exceeded expectations during each year of his employment. Mr. Cole also received numerous awards for top performance among his peers at First Republic immediately before his employment with the Bank was terminated, when he was awarded First Republic's award for "Wealth Management Partner for 2006". According to a letter, dated October 24, 2006, from Robert Thornton, President of First Republic Wealth Management Division, the "Wealth Management Partner for 2006" award reflected the level of business Mr. Cole generated to First Republic and its wealth management affiliates. In fourth quarter of 2006, Mr. Cole ranked in the top 4 out of over 100 employees in business lending sales. Mr. Cole closed 2006 with highest sales of his career, bringing in more business then in 2005 where according to his performance review dated January of 2006, he "exceeded sales goals by 200%." In August of 2006, Mr. Cole obtained the business of a major ski resort for the Bank which led to revenue generation for the bank of which he earned a percentage of that revenue as his compensation.

6. After Mr. Cole's first 120 days of employment at the Bank, he was promoted and offered a position as a Private Banker reporting to Ms. Margaret Mak, Director of Private Banking. Over the course of his employment at First Republic, Mr. Cole received six promotions. At the time, his employment relationship ended with the Bank, Mr. Cole's title was Senior Private Business Banker.

7. Sometime in 1998, First Republic held a bank loan committee meeting attended by all senior level management, as well as the Bank's Chief Executive Officer, Chief Financial Officer, Chief Credit Officer and Chief Operating Officer, Ms. Mak addressed the entire audience and turned to Mr. Cole's indirect supervisor, Anthony Colino and stated "Don't touch him, he's got AIDS."

1  Mr. Colino and Ann French (deceased) subsequently filed a formal complaint alleging, among other

2  things, a hostile work environment and harassment with the Bank concerning Ms. Mak's remarks on

3  Acquired Immune Deficiency Symdrome at a formal bank meeting. Following the Bank's

4  investigation of Mr. Colino and Ms. French's complaint, First Republic represented and promised to

5  Mr. Cole, Mr. Colino and Ms. French, as well as Sabra Hughes, Tracy Chan, Athena Hilario, Indi

6  Kroninsberg and John Cano, Ms. Mak would never again manage or supervise anyone at First

7  Republic again and Ms. Mak was placed on an immediate sabbatical that lasted only one month.

8  Upon Ms. Mak's return, First Republic permitted Ms. Mak to hire a new team of employees and let

9  her retain position as Director of Private Banking. Eventually, Ms. Mak was eventually promoted to

10  the position of Managing Director of Private Banking and then to the position of Senior Managing

11  Director and Vice-President of Private Banking were she remains working today.

12

13  8.     Sometime in September 2003, Mr. Cole was diagnosed with HIV disease. On or

14  about August 21, 2006, Mr. Cole was diagnosed with full blown AIDS and in Mr. Cole's doctor

15  submitted a letter First Republic stating that he must go out on leave under the federal Family

16  Medical Leave Act no later than September 4, 2006 for 90 days of hospitalization and intensive

17  treatment. This form was confidentially submitted to the Bank's human resources department per the

18  banks policies and procedures under state and federal law.

19

20  9.     Mr. Cole continued to work at the Bank for 3 additional days beyond his doctor's

21  authorization because of his concern for his clients and their reassignment during his leave to Ms.

22  Mak. During Mr. Cole's leave, his access to his Bank phone and email was cut-off. Mr. Cole

23  eventually began treatment and successfully recovered to a point in which his doctor was willing to

24  release him back to work before the end of the 90 days. He then submitted a request for reasonable

25  accommodation for 3 weeks of a modified work schedule at the end of which Mr. Cole could resume

26  his normal work responsibilities. The bank denied the request and asked that his not come back until

27

28

the full 90 days was up. Mr. Cole submitted a request from his doctor releasing him to return to work of November 20, 2006, and he returned to work on that day.

10. On November 20, 2006, Mr. Cole received an email from the Bank requesting a meeting the very next morning. On November 21, 2006, just one day after returning to work, Mr. Cole was put on final warning for "performance issues" stating clients were upset that they were unable to reach Mr. Cole. In the memo of the same date, Mr. Cole refused to sign placed hostile retaliatory demands on him through the end of the year through a corrective performance plan. Mr. Cole exceeded the corrective performance plan by 200% while only working part-time on his intermittent leave under the Family Medical Leave Act.

11. After 10 years of service, Mr. Cole was terminated in a meeting on January 5, 2007. (Attached hereto as Exhibit "B" is a true and correct of the letter of termination). The termination was under false pretenses as Mr. Cole's position was listed with the Bank the next day.

12. During the termination meeting on January 5, 2007, the Bank falsely represented several facts to Mr. Cole, including, but not limited to, the representation that Mr. Cole must sign a Severance Agreement (attached hereto as Exhibit "C" is a true and correct copy of the Severance Agreement) and return it to the Bank within ten days or he would "not receive your any compensation" Mr. Cole was owed and, further that they would have no choice but to deny any claim made for unemployment and Mr. Cole would need to reimburse the Bank immediately for pay received while out on protected medical leave.

13. On the day Mr. Cole signed the Severance Agreement, he had been under intense duress as he was advised by his doctor who's office worked calling other doctors to find donated medication related to his HIV disease necessary for his survival, but were unsuccessful after 9 days. Mr. Cole had no money to buy food and had not eaten for two days prior to signing the agreement which make already strong side effect of his medications, overwhelming.

COMPLAINT AND REQUEST FOR JURY TRIAL                                    4
Case No.

14. Plaintiff's request for accommodation in the form of time off from work to deal with his medical condition was a motivating reason for his termination.

15. Plaintiff's medical condition (i.e. his HIV status), perceived medical condition, disability, and perceived disability were each motivating reasons for Plaintiff's termination. First Republic's desire not to pay Plaintiff wages it owed him pursuant to its contract with him was a motivating reason for Plaintiff's termination.

16. As a direct, foreseeable and proximate result of First Republic's conduct, Mr. Cole has suffered harm, including lost earnings and other employment benefits, future lost earnings, mental distress, and other general and special damages, all to Mr. Cole's detriment in an amount which will be proven at trial.

17. First Republic committed the acts alleged herein maliciously, oppressively, with ill will and/or in reckless disregard of Mr. Cole's statutory rights. Mr. Cole is therefore entitled to recover punitive damages from the Defendant in an amount according to proof.\

18. Mr. Cole has been required to seek and retain legal counsel to vindicate his statutory rights and is thus entitled to reimbursement of reasonable attorney fees, including any lodestar multiplier.

## II.

## FIRST CAUSE OF ACTION (FOR DECLARATORY RELIEF)

## THE ARBITRATION AGREEMENT EXECUTED IN 1997 IS VOID

(Code of Civil Procedure § 1281)

19. The allegations of each of the preceding paragraphs are realleged and incorporated herein by reference.

20. The Arbitration Agreement, executed in 1997 prior to the Circuit City arbitration decisions of the Ninth Circuit and U.S. Supreme Court. No subsequent arbitration agreement exists

1  between the Plaintiff and Defendant. The Arbitration Agreement contains unconscionable clauses

2  and is void for that, among other reasons.

3      21.    The Defendant also failed to obtained sufficient consideration for the Arbitration

4  Agreement.

5

6      22.    Plaintiff is entitled to declaratory relief, as well as an injunction (both preliminary and

7  permanent) barring Defendant's enforcement of the Arbitration Agreement.

8

9                                              **III.**

10              **SECOND CAUSE OF ACTION  (FOR DECLARATORY RELIEF)**

11  **DEFENDANT'S SERVERANCE AGREEMENT WITH PLAINTIFF IS PROCEDURALLY**

12                    **AND SUBSTANTIVELY UNCONSCIONABLE**

13

14      23.    The allegations of each of the preceding paragraphs are realleged and incorporated

15  herein by reference.

16      24.    The Severance Agreement lacks consideration, as First Republic provided none, thus,

17  no contract was formed.

18      25.    The Severance Agreement is procedurally unconscionable as follows:

19            a.    Fraud. First Republic purportrated fraud upon Mr. Cole to obtain his

20      signature on the Severance Agreement.

21

22            b.    Duress.  Mr. Cole was executed the severance agreement under duress.

23            c.    Mistake. Mr. Cole signed the severance agreement under a mistake of fact

24      that was falsely represented by the Bank.

25            d.    Lack of Capacity.  Given his medical condition and the medications he was

26      taking, Mr. Cole lacked the capacity to sign the severance agreement.

27

28

**COMPLAINT AND REQUEST FOR JURY TRIAL**                                    6
Case No.

1    26.    The Severance Agreement is substantively unconscionable as it provides less

2    compensation than Mr. Cole is entitled to under his compensation scheme at the Bank if he merely

3    was terminated or voluntarily quit.

### IV.

### THIRD CAUSE OF ACTION

### WRONGFUL TERMINATION IN VIOLATION OF PUBLIC POLICY

27.    The allegations of each of the preceding paragraphs are realleged and incorporated

herein by reference.

28.    California has a strong public policy permitting employees to request accommodation

for disabilities. *See* California Government Code § 12940. California also has a strong public policy

prohibiting employers from discriminating against employees for disabilities, perceived disabilities,

medical conditions, and perceived medical conditions. Id.

29.    California has a strong public policy "favor[ing] the full and prompt payment of

wages due an employee." Gould v. Maryland Sound Industries (1995) 31 Cal.App.4th 1137, 1147

*(citations omitted)* (holding that "[w]ages are not ordinary debts. Because of the economic position

of the average worker and, in particular, his family, it is essential to public welfare that he receive

his pay promptly....") *See also* Labor Code § 204, requiring payment of wages, and Labor Code §§

1182.12 and 1194, requiring payment of no less than the minimum wage for work performed.

30.    The Bank's termination of Mr. Cole is in violation of public policy in that his

termination was based upon his request for an accommodation due to his HIV status and the Bank's

failure to pay wages owed him.

V.

## FOURTH CAUSE OF ACTION

## BREACH OF WRITTEN, ORAL AND/OR IMPLIED CONTRACT
## FAILURE TO PAY WAGES

(Labor Code §§ 203, 218, 218.5, 218.6)

31.     The allegations of each of the preceding paragraphs are realleged and incorporated herein by reference.

32.     At all times relevant hereto, Plaintiff and First Republic had a written, oral and/or implied contracts requiring First Republic to pay Plaintiff certain sums.

33.     Plaintiff performed all of his obligations under this contract.

34.     First Republic failed to pay Plaintiff the amounts owed him pursuant to the terms of those written, oral and/or implied contracts.

## VI.

## FIFTH CAUSE OF ACTION

## VIOLATION OF UNFAIR COMPETITION LAW

(Business & Professions Code § 17200, et seq.)

35.     The allegations of each of the preceding paragraphs are realleged and incorporated herein by reference.

36.     At all times relevant herein, Defendant was a "person" subject to Business & Professions Code §17200, et seq.

37.     Defendant violated California's Unfair Competition Law through its improper actions and conduct as set forth and alleged above, those actions gave Defendant an unfair business advantage over its competitors in banking and financial services industry. Said violations render Defendants liable for restitution of unpaid wages, interest thereon, civil penalties, injunctive relief, attorney's fees and costs, and other relief as appropriate.

COMPLAINT AND REQUEST FOR JURY TRIAL                                                   8
Case No.

1

## VII.

2

### PRAYER FOR RELIEF

3

WHEREFORE, Plaintiff prays for judgment as follows:

4

5

1.     Pursuant to Business and Professions Code §17200 et seq., an Order enjoining

6

Defendant from enforcing the Arbitration Agreement executed by Mr. Cole on February 13, 1997 to

7

which First Republic is signatory. Further, for an Order holding the Arbitration Agreement as *void*

8

on the account of its unconscionability.

9

2.     Pursuant to Business and Professions Code §17200, *et seq.*, an Order enjoining

10

Defendant from enforcing any terms and conditions of the Severance Agreement, dated January 16,

11

2007 to which Mr. Cole and First Republic are signatory. Further, for an Order holding the

12

13

Severance Agreement is *void ab initio* on the account of its lack of consideration, as well as its

14

procedural and substantive unconscionability.

15

3.     Pursuant to Business and Professions Code §17200 *et seq.*, an award of restitution

16

and/or compensatory damages[1] for unpaid wages in the amount according to proof currently

17

estimated to be $ 245,575.58

18

4.     Pursuant to Business and Professions Code §17200 *et seq.* and Labor Code § 218.6,

19

an award of pre-judgment interest at the legal rate currently estimated to be approximately

20

$98,230.23 and any further amounts according to proof.

21

22

5.     Pursuant to Business and Professions Code §17200 *et seq.* and Labor Code § 218.5,

23

an award of reasonable attorney's fees and costs of suit incurred (approximately $5,000.00) through

24

the date of filing suit, as well as further amounts incurred after this suit initiated, according to proof.

25

26

27

28

---

[1]     Damages provided herein are estimates.

COMPLAINT AND REQUEST FOR JURY TRIAL                                                  9
Case No.

6.     Pursuant to Business & Professions Code §17200, *et seq.* and Labor Code §203, an award of thirty (30) days of wages at Plaintiff's regular rate of compensation at the time of his termination. Plaintiff estimates this amount to be approximately $ 20,464.00.

7.     For compensatory damages for lost wages, earnings, and benefits, according to proof;

8.     For general damages for humiliation, mental anguish and emotional distress, according to proof;

9.     For consequential damages, according to proof;

10.     For punitive damages against Defendant, according to proof;

11.     For reasonable attorneys' fees under the California Labor Code and other applicable statutes, according to proof;

12.     For reasonable costs, according to proof;

13.     Injunctive relief to address the wrongs alleged herein; and

14.     For such other and further relief as the Court may deem just and proper..

Dated: January __, 2009                         Respectfully submitted,

 

 

Christopher Lee Cole
*In Pro Per*

1

2

### JURY TRIAL DEMAND

3

Plaintiff hereby demands a trial by jury.

4

Dated: January 5, 2009.

5

CHRISTOPHER LEE COLE

6

*In Pro Per*

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**COMPLAINT AND REQUEST FOR JURY TRIAL**
Case No.

11



**FIRST REPUBLIC**
**S A V I N G S**
**BANK**
*Over 40 Years*

February 10, 1997

<u>PERSONAL AND CONFIDENTIAL</u>

Mr. Christopher Cole
3348 16th Street
San Francisco, CA 94114

Dear Christopher:                    RE: <u>Offer of Employment</u>

We are pleased to offer you an opportunity to join First Republic Savings Bank. Your position will be Savings Officer. You will report directly to me.

I would like to confirm the compensation arrangements we discussed:

1.  Salary: $1,125.00 semi-monthly which, if annualized, is $27,000.00. Salary level-Non-Exempt. During the first 120 days of employment, you will be on a Trial Orientation basis during which suitability will be determined.

2.  Insurance and Employee Benefits - medical and dental health plan coverage for yourself is currently $59.95 or $105.95 per month depending on the plan you choose. Coverage would commence on the first day of the month following your start date which for you would be March 1, 1997. Our Employee Benefits include term life insurance and Long Term Disability Insurance, both paid for by the Company. Employee Benefits also include the ability to participate in the Company's 401K Matched Savings Program and Employee Stock Ownership Plan ("ESOP). Participation in ESOP and 401K (with 401K at your election) begins after six months of employment. You will also be eligible to join the Employee Stock Purchase Plan following one year of employment. You will in the future, of course, be subject to any change in Company-provided Insurance and Employee Benefits.

3.  Vacation - Two weeks per annum. Vacation accrues for all employees upon completing the 120-day Orientation Period. Vacation days should be taken in the calendar year earned.

4.  Upon acceptance of this offer, First Republic will require: 1) proof of U.S. Citizenship or Permanent Resident Status that gives the right to legally work in the United States and 2) an Arbitration Agreement.

101 Pine Street, San Francisco, CA 94111. Tel. (415) 392-1400 or (800) 392-1400. Fax (415) 296-3563
*A subsidiary of First Republic Bancorp Inc., a New York Stock Exchange company.*
*San Francisco    Los Angeles    Beverly Hills    San Diego    Las Vegas*



Offer Letter/Mr. Cole
February 10, 1997
Page 2

5. By signing this Offer Letter of employment and providing your social security number below, you are authorizing First Republic to obtain a personal credit check under your name and to periodically recheck your credit status at any time during your employment.

6. All other terms and conditions of employment are explained in First Republic's Personnel Manual.

7. Start Date: February 12, 1997

We are looking forward very much to a mutually rewarding professional relationship.

Very truly yours,

Debra Strother

APPROVED: *Carol McCormick*
Carol McCormick

* * * * * * * * * * * * * * * * * * * * * * * * * *

I hereby accept this Employment Offer.

Christopher Cole

Date 2/11/97

5 38-82-8773

Social Security Number

COLE EXHIBIT A                                                     002

## ARBITRATION AGREEMENT

The undersigned Employee, _Chris Cole_ , and First Republic agree that any controversy between the Employee and First Republic arising out of or relating to the Employee's employment shall be resolved by final and binding arbitration. Arbitration shall apply to any and all claims, including but not limited to common law claims, statutory claims and/or claims of discrimination.

The arbitration process may be initiated by either party serving a written demand for arbitration upon the other. The arbitration shall be before a single arbitrator in accordance with the rules of American Arbitration Association or such alternative dispute resolution service as agreed by the parties. The arbitrator shall be bound by applicable state and federal law and shall issue a written opinion setting forth findings of fact and conclusions of law. The arbitrator shall have the power to grant all legal and equitable remedies provided by law except that the arbitrator shall not award punitive damages. The parties expressly agree and covenant to be bound by the *decision of the arbitrator as a final determination of* the matter in dispute.

The parties agree to share equally the administrative fee as well as the arbitrator's fee, if any, unless otherwise assessed by the arbitrator. The administrative fee shall be advanced by the initiating party subject to final apportionment by the arbitrator in the award. The parties agree that the arbitrator's award may be enforced in any court having jurisdiction thereof by the filing of a petition to enforce such award. Costs of filing may be recovered by the party that initiates the action to have an award enforced. This arbitration agreement is not an employment agreement.

It is understood and agreed by the parties that their agreements herein concerning arbitration do not contain, and cannot be relied upon by the employee to contain any promises or representations concerning the *duration of the employment relationship, or* the circumstances under which the employment relationship may be modified or terminated.

Dated: _2/13/97_

_____
(Employee Signature)

Dated: _3/4/97_

**FIRST REPUBLIC**

_____
First Republic Executive Officer

G:\SHARED\PERSONEL\PERFORMS\ARBITRAT.AGR

### FIRST REPUBLIC BANK

EMPLOYEE ACKNOWLEDGEMENT

Employee Name: _Chrs Cole_

Department: _____

I hereby acknowledge receipt of the revised *Mandatory Two-Week Policy*, effective January 1, 2002.

I understand that the policy now applies to all full-time and part-time employees that have completed their first full year of service and will be measured on a calendar year basis.

I further understand that it is my responsibility to review and understand the revised policy and that any questions I may have regarding the policy, will be directed to the Human Resources Department.

_____
Employee Signature

7/6/02
Date

FEB 8 2002
PERSONNEL

COLE EXHIBIT A

004

Date of Application:_____

# FIRST REPUBLIC
## EMPLOYMENT APPLICATION
### An Equal Opportunity Employer

| | |
|---|---|
| Name: | Chris Cole |
| Present Address: | 3348 16ᵗʰ ST |
| City: San Francisco | State: CA    Zip: 94114 |
| Permanent Address: | |
| City: | State:    Zip: |
| Phone Number: (415) 552-4140 | Social Security Number: 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 |

Referred By: Bank Staff

## EMPLOYMENT DESIRED

Position applied for: Savings Officer

Date you would be available to begin employment: 2/2/87

| | Yes | No |
|---|---|---|
| Are you currently employed? | Yes [ ] | No [X] |
| If yes, may we inquire of your present employer? | Yes [ ] | No [ ] |
| Have you ever applied to or been employed by this company before? | Yes [ ] | No [X] |

Where? _____

When? Dates of employment, From: _____ To: _____

| | Yes | No |
|---|---|---|
| If you are under 18 years of age, can you provide a work permit if offered the job? | Yes [ ] | No [X] |
| Have you ever been convicted of a felony? | Yes [ ] | No [X] |

(A conviction is not an automatic bar to employment. Each case will be considered on its own merits.)

If yes, please explain: _____

## EDUCATION

| | Name and address of School | Subjects Studied | Did you Graduate? |
|---|---|---|---|
| High School | South Kitsap | Business, Draw | Yes |
| College | Seattle Central College | Business | Yes |

Other Subjects of special study or research work Activities (you may exclude those that indicate race, creed, sex, marital status, age, color, national origin, or physical handicap.)

AIB - American Institute of Banking

COLE EXHIBIT A

## EMPLOYMENT HISTORY CONTINUED

| Name of Employer | From: Month | Year | To: Month | Year |
|---|---|---|---|---|
| | | | | |
| Address: (Street, City, State) | Telephone: | | Pay Starting: | |
| Position: | Supervisor: | | Final: | |
| Description of Duties: | | | | |
| Reason for Leaving: | | | | |

## ADDITIONAL INFORMATION

Please identify and explain any periods of unemployment in excess of two months during the past 10 years:

Period of Unemployment:
From :  N/A  To:                    Reason for Unemployment:

To assist us to check records and to verify prior employment and education, please indicate whether you were ever employed or enrolled under a name other than that used on this application:        Yes [ ]        No ☒

If yes, please specify the name you were employed or enrolled under:

Are you able to perform the essential functions of the position for which you have applied as they are described in the job description provided?        Yes [✓]        No [ ]

If no, please indicate what may be done to accommodate you:

## REFERENCES

Please provide the names, addresses, and telephone numbers of at least two references who are not related to you:

| Name | Street | City | State | Zip |
|---|---|---|---|---|
| Debbie Cleary | See ☒ | | | |
| Jack Ray | Attached | | | |
| Karen Baker | Reference | | | |
| | Sheet | | | |

3

COLE EXHIBIT A

006

# EQUAL EMPLOYMENT OPPORTUNITY: THE

# LAW

## AMERICANS WITH DISABILITIES ACT

The Americans with Disabilities Act of 1990, as amended,
prohibits discrimination on the basis of disability, and protects
qualified applicants and employees with disabilities from
discrimination in hiring, promotion, discharge, pay, job train-
ing, fringe benefits, and other aspects of employment. The law
also requires that covered entities provide qualified applicants
and employees with disabilities with necessary reasonable
accomodations that do not impose undue hardship to the
employer. The law covers applicants to and employees of most
private employers, state and local governments, educational
institution, employment agencies and labor organization.

If you believe that you have been discriminated against under
any of the above laws, you immediately should contact:

The U.S. Equal Employment Opportunity Commission
(EEOC), 1801 L Street, N.W., Washington, D.C. 20507 or
an EEOC field office by calling toll free 800-669-EEOC.
For individuals with hearing impairments, EEOC's toll free
TDD number is 800-800-3302.

## EMPLOYEE ACKNOWLEDGMENT

Employee Name ___*Chris Cole*___

Title ___*Savings Officer*___

Job Classification Upon Completing Trial Orientation Period:

| | | | |
|---|---|---|---|
| Full-Time | _X_ | Part-Time | ___ |
| Exempt | ___ | Non-Exempt | _x_ |
| Regular | ___ | Temporary | ___ |

(Please mark all applicable categories.)

I acknowledge that I have received a copy of First Republic's Personnel Manual and understand that it contains important information on the Company's general personnel policies and on my privileges and obligations as an employee. I acknowledge that I am expected to read, understand, and adhere to Company policies and will familiarize myself with the material herein.

I understand that I am governed by the contents of the Personnel Manual. However, the Manual is not contractual, and the Company may change, rescind or add to any policies, benefits or practices described herein from time to time in its sole and absolute discretion with or without prior notice. Additionally, I concur with the Job Classification data stated above.

I further understand that my employment with First Republic is Contingent upon my ability to provide specified identification proving my legal right to work in the United States within three days of my original start date. I understand that my employment is further contingent upon successfully completing my Trial Orientation Period.

Furthermore, I understand that employment with First Republic is not for a specified term and is at the mutual consent of First Republic and myself. This means that either I or First Republic may terminate the employment at will, with or without cause, at any time. I further understand that the at will nature of the employment relationship may only be modified by a written agreement between First Republic's Corporate President and myself.

Date: ___*2/14/97*___

_____
Employee's Signature

G:\SHARED\PERSONEL\PERFORMS\ACKNOWLG.EE

COLE EXHIBIT A                    008

## NEW ENROLLMENT CHECK LIST

**Name** ~~Fe~~ Cole, Chris          **DOH** Z-12-97 **File #** 1259

___ Send E-mail to Office Manager, Operations Manager & Network Manager

___ Enrollment forms, personnel manual, welcome book, medical package, dental package to EE

✓ Offer Letter **properly** executed                          Fax to AS ✓

✓ Copy Offer Letter for Due Dilligence

___ Resume

✓ Application **properly** filled out

✓ I-9 **properly** filled out                          I-9 filed in book ✓

✓ W4                          Exempt or more than 10 exemptions? ___

✓ Emergency information

✓ EEOC identification form                          Send to AS ✓

✓ Arbitration Agreement

✓ Conflict of Interest-- personnel manual

✓ Employee Acknowledgment-- personnel manual

✓ Direct Deposit

✓ Arbitration Agreement forwarded to KA/JH for signature 3-3          Received ✓

✓ 5x7 employee information card filled out                          Faxed to AS ✓

✓ Entered in Payroll

___ Attendance Tracking set up

✓ Employee Title List

G:\SHARED\PERSONEL\PERFORMS\ENROLCHK.LST

**From:**      Debra Strother
**To:**        JWELLS
**Date:**      2/10/97 4:15pm
**Subject:**   New Employee -Reply -Reply

Sorry!

Christopher Cole
3348 16th St.
San Francisco, CA 94114
Reporting to:  Debra Strother
Title:  Savings Officer
Start Date:  2/12/97
Salary:  $27,000. per year
Status:  Non-Exempt



## FIRST REPUBLIC BANK
It's a privilege to serve you®

January 5, 2007

Mr. Christopher Cole
1025 17ᵗʰ Street, #2
San Francisco, CA 94107

Dear Chris:

Effective Friday, January 5, 2007, your employment with First Republic Bank is terminated.

Enclosed is your final pay which includes regular salary from January 1 through January 5, 2007, two weeks in lieu of notice and any unused accrued vacation time.

In addition, in exchange for your execution of the enclosed release agreement, the Bank will pay you an additional two months severance and provide two months of COBRA benefits should you elect COBRA coverage. Should you decide to accept this severance package, please forward it to Ester Trillana in the Human Resources department on or before January 16. 2007. You may fax the agreement to (415) 262- 4131, as well.

If you are currently enrolled in the group health plan at First Republic Bank, you will receive information within the next two weeks from Vita Administration Company regarding continuation of benefits under COBRA. As stated above, First Republic will pay for up to two (2) months of COBRA coverage.

As a reminder, please advise First Republic Bank of any address changes to ensure proper mailing of your 2006 and 2007 W-2 forms.

Should you need further assistance, please contact Ester Trillana in the Human Resources department at (415) 288-1470 or etrillana@firstrepublic.com.

Sincerely,

Anna Hirano
Vice President
Retail Banking Management

cc: Human Resources Department

San Francisco   Los Angeles   Santa Barbara   Newport Beach   San Diego   Las Vegas   New York

111 PINE STREET, SAN FRANCISCO, CALIFORNIA 94111, TEL (415) 392-1400 OR (800) 392-1400, FAX (415) 392-1413
CONVENIENT INTERNET BANKING AT www.firstrepublic.com · NEW YORK STOCK EXCHANGE SYMBOL FRB · MEMBER FDIC

COLE EXHIBIT B

001

## SEVERANCE AND GENERAL RELEASE AGREEMENT

This Severance and General Release Agreement ("Agreement") is made by and between CHRISTOPHER COLE (hereinafter referred to as "Mr. Cole") and FIRST REPUBLIC BANK (hereinafter referred to as "the Bank").

### RECITALS

A. WHEREAS, Mr. Cole's employment with the Bank will cease effective January 5, 2007.

B. WHEREAS, Mr. Cole and the Bank desire to resolve any and all claims and/or potential claims, which Mr. Cole has or may have against the Bank, on the terms and conditions set forth herein.

C. WHEREAS, Mr. Cole received this Agreement on January 5, 2007, and Mr. Cole understands that he may have until January 16, 2007 to consider the Agreement. This consideration period will expire on January 16, 2007.

NOW, THEREFORE, in consideration of the mutual promises herein contained, it is agreed as follows.

### AGREEMENT

A. SEVERANCE AMOUNT: As valuable and sufficient consideration for each and all of Mr. Cole's obligations and promises set forth below, the Bank will provide the following:

1. Cash Consideration. The Bank shall pay Mr. Cole the equivalent of two month's salary; Fourteen Thousand Five Hundred Dollars ($14,500.00), less all applicable withholdings and deductions (the "Severance Amount"), which he otherwise would not be entitled to receive, in consideration for his signing this Agreement and his continuing observation of the terms of this Agreement. The Severance Amount shall be paid by one check payable to Christopher Cole to be delivered within ten (10) business days following the execution of this Agreement.

2. COBRA Premium Reimbursement. If Mr. Cole is eligible for and elects to continue group health coverage pursuant to the terms of the Consolidated Omnibus Reconciliation Act ("COBRA"), the Bank shall pay Mr. Cole an amount equal to COBRA premium payments for health insurance coverage for two months.

Mr. Cole agrees that he will not seek any further compensation in connection with the matters covered by this Agreement.

COLE EXHIBIT C    001

B.    RELEASE:

1.    For and in consideration of the commitments made herein by the Bank, Mr. Cole for himself, his heirs, representatives, executors, administrators, successors, and assigns, does hereby completely release, acquit and forever discharge the Bank, its subsidiaries, related and parent corporations and their present and former owners, shareholders, officers, directors, employees, agents, successors and assigns ("the Released Parties") from any and all charges, complaints, claims, liabilities, obligations, promises, agreements, damages, penalties, actions, causes of action, suits, rights, demands, costs, losses, debts, and expenses (including attorneys' fees and costs actually incurred), of any nature whatsoever, known or unknown, which Mr. Cole now has, has ever had, or may in the future have, against any of the Released Parties arising out of or in any way related to events, acts, conduct or omissions occurring prior to Mr. Cole signing this Agreement or in anyway related to his employment with the Bank (the "Released Claims").

2.    The Released Claims include, but are not limited to, any alleged violation by the Released Parties of the laws, statutes or regulations of the State of California, the United States, or any other jurisdiction, including, but not limited to any and all claims for breach of contract; breach of the implied covenant of good faith and fair dealing; inducement of breach; interference with contract or prospective economic advantage; wrongful or unlawful failure to hire, discharge or demotion; violation of public policy; invasion of privacy; intentional or negligent infliction of emotional distress; intentional or negligent misrepresentation; conspiracy; failure to pay wages, commissions, overtime, benefits, vacation pay, severance pay, attorneys' fees, or any compensation of any sort; defamation, slander or libel; unlawful effort to prevent employment; discrimination or harassment on the basis of race, color, sex, sexual orientation, religion, national origin, ancestry, age, disability, handicap, medical condition or any other protected class or status; any claim under Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. §2000e et. seq., the California Fair Employment and Housing Act, as amended; violation of the Occupational Safety and Health Act ("OSHA"), or any other health/safety laws, statutes or regulations; violation of the Employee Retirement Income Security Act of 1974 ("ERISA"); violation of the Internal Revenue Code; violation of the federal Americans with Disabilities Act ("ADA"); violation of the Family and Medical Leave Act ("FMLA") or California's Family Rights Act ("CFRA"), violation of Department of Labor (DOL) regulations; or violation of California's Labor Code or Business and Professions Code, or any other alleged wrongful conduct by the Released Parties, including but not limited to any claim related in any way to Mr. Cole's employment with the Bank or the termination of that employment, *provided, however,* that the release contained herein shall not be construed in any way to release the Bank from any obligation to indemnify Mr. Cole pursuant to agreement or applicable law (including, without limitation, Labor Code section 2802), or any other non-waivable obligation.

3.    Mr. Cole hereby acknowledges and agrees that this Release is a general release with respect to any real or potential dispute arising out of or in any way

**CONFIDENTIAL**

COLE EXHIBIT C

002

related to his employment with the Bank or the termination thereof. Mr. Cole further understands and expressly waives any and all claims for damages, known, unknown, speculative, ascertained in the future, or which he does not know of or suspect to exist, whether through ignorance, oversight, error, negligence, or otherwise, and which if known, would materially affect his decision to execute this Agreement. Mr. Cole expressly waives all rights or benefits which he may have under Section 1542 of the Civil Code of the State of California, which provides as follows:

"A GENERAL RELEASE DOES NOT EXTEND TO CLAIMS WHICH THE CREDITOR DOES NOT KNOW OR SUSPECT TO EXIST IN HIS/HER FAVOR AT THE TIME OF EXECUTING THE RELEASE, WHICH IF KNOWN BY HIM/HER MUST HAVE MATERIALLY AFFECTED HIS/HER SETTLEMENT WITH THE DEBTOR."

### C.     ADDITIONAL AGREEMENTS:

Mr. Cole further understands and agrees that:

1.     **No Admission.** This Release is not an admission of any wrongdoing or liability by the Released Parties. the Released Parties dispute all claims.

2.     **No Balances Owed o r Wrongful A cts.** Mr. Cole acknowledges and represents that he already has been paid all wages, commissions, compensation, benefits, and other amounts and has been provided all leaves of absences and/or other accommodations that any o f the Released Parties has ever owed to him, except for unpaid amounts or benefits expressly payable under the terms of this Agreement. Mr. Cole acknowledges and represents that the Released Parties have violated or denied her any right under the Family Medical Leave Act (FMLA), the California Family Rights Act ("CFRA") or any other federal or state law or statute. All of the factual representations made herein and that induced the Bank to enter into this Agreement are true in all material respects.

3.     **No Pending Actions or Lawsuits or Assistance.** Mr. Cole represents that he has no lawsuits, claims, administrative proceedings or other actions pending in his name, or on behalf of himself or any other person or entity, against any of the Released Parties. Mr. Cole also agrees that he will not voluntarily provide assistance, information or advice, directly or indirectly (including through agents or attorneys), to any person or entity in connection with any actual or potential claim or cause of action of any kind against the Released Parties, and he shall not induce or encourage any person or entity to do so, unless compelled or authorized to do so by law.

4.     **Severability.** If a court finds any provision of this Agreement to be void or unenforceable, in whole or in part, that determination shall not affect the enforceability of any other provision of this Agreement. The court will then have the authority to modify or replace the void or unenforceable provision with a valid and

### CONFIDENTIAL

COLE EXHIBIT C                                           003

enforceable provision that most accurately represents the parties' intention with respect to the void and unenforceable provision.

5.  **Attorneys' Fees and Costs.** Each party to this Agreement will bear his or its own costs, expenses and attorneys' fees incurred in or arising out of or in any way related to this Agreement. In the event that either party breaches any provision of this Agreement, the breaching party agrees to indemnify the other party against any and all expenses, including reasonable attorneys' fees and costs, which the non-breaching party incurs as a consequence of the breaching party's breach.

6.  **Confidentiality.** Mr. Cole understands and agrees that the terms of this Agreement are confidential and that Mr. Cole may not disclose to any person the contents of this Agreement, except to Mr. Cole's immediate family members, attorneys, accountants, or tax preparers, who shall also be bound to maintain the confidentiality of this Agreement. Mr. Cole specifically agrees that he will not disclose the fact or terms of this Agreement to any current, former or prospective employee of the Bank. Notwithstanding the above, Mr. Cole agrees to notify the Released Parties in the event of a demand under color of law or judicial process for information protected by this confidentiality provision as soon as practicable, to enable the Released Parties to move for judicial protection of this information.

7.  **No Disparagement.** Mr. Cole shall not disparage the Bank or any of the Released Parties in any manner likely to interfere with and/or be harmful to any of them or their business, business reputation or personal reputation.

8.  **Return of Company Property.** Mr. Cole agrees to return any and all property of the Bank, including but not limited to, any and all documents, information and equipment, provided by the Bank for Mr. Cole's use during his employment with the Bank.

9.  **Confidential Information.** Mr. Cole acknowledges that as an employee of the Bank he has had access to and may be in possession of non-public information about the Bank and its business plans and strategies. Therefore, Mr. Cole and each other person controlling, controlled by or under common control with Mr. Cole, shall not disclose directly or indirectly to any person or entity outside the employ of the Bank, without the express written authorization of the Bank, unless required by law, any trade secrets or any confidential or proprietary information of the Bank, including, but not limited to customer lists, pricing strategies, customer or employee files and records, budget information, contracts, marketing and business plans, personnel and compensation information (other than his own compensation information), and other trade secret and/or proprietary information, or any other confidential information of the Bank or any financial information about the Bank or its business not in the public domain. For purposes of this Section, the term "the Bank" shall include the Bank and its subsidiaries, related corporations and affiliates. If Mr. Cole receives a subpoena for any such documents or information, Mr. Cole shall give prompt notice to the Bank so that

**CONFIDENTIAL**

COLE EXHIBIT C                                                004

the Bank may take any action that it deems necessary or appropriate to seek a protective order or other appropriate remedy.

10. **No Solicitation.** From the date hereof and for one year thereafter, Mr. Cole agrees not to directly or indirectly solicit for hire any person who is currently employed by the Bank, its affiliates, and its subsidiaries.

11. **Governing Law.** This Agreement is entered into in California, and shall be interpreted, enforced and governed under the laws of the State of California, without regard to its conflict of laws principles. The language of all parts of this Agreement shall be construed as a whole, according to its fair meaning, and not strictly for or against either of the parties, regardless of either party's involvement in its preparation.

12. **Final Agreement.** This Agreement contains the entire agreement between the parties and constitutes the final, complete and exclusive expression of their agreement with respect to the subject matter hereof. The terms of this Agreement are contractual and not a mere recital. It is executed without reliance upon any promise, warranty or representation by either party or any representative of either party other than those expressly contained herein. This Agreement supersedes any and all prior agreements or promises, whether written or oral, entered into between the parties with regard to the subject matter of this Agreement, and cannot be modified or amended except in a writing signed by the parties. Notwithstanding the above, Mr. Cole understands and agrees that the terms of any Non-disclosure Agreement between Mr. Cole and the Bank, and Mr. Cole's obligations thereunder, remain in full force and effect.

13. **Voluntary Agreement.** Mr. Cole understands and agrees that he is hereby advised in writing to consider the terms of this Agreement and consult with an attorney of his choice prior to executing this Agreement. Mr. Cole has carefully read and fully understands all of the provisions of this Agreement. Mr. Cole understands that he is releasing the Released Parties from any and all claims he may have against them. He knowingly and voluntarily agrees to all of the terms set forth in this Agreement and intends to be legally bound by the same.

14. **Counterparts and Facsimile Signatures.** This Agreement may be executed in counterparts, each of which shall be deemed an original, but which together shall constitute one and the same instrument. Facsimile signatures shall be as effective as original signatures.

**CONFIDENTIAL**

IN WITNESS WHEREOF, the parties have duly authorized and caused this Agreement to be executed on the dates set forth below:

By: _____     Date: __1/16___, 2007

Christopher Cole

FIRST REPUBLIC BANK

By: _____     Date: _1-16-07_, 2007

Dan Ben Ora
Senior Vice President and
Chief People Officer

**CONFIDENTIAL**

COLE EXHIBIT C     006